UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CALVIN BROWN,

                Plaintiff,

v.                                               Case No. 15-cv-1191-pp

BEVERLY FELTEN and
DONALD STONEFELD,

                Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 40, 43)**

---

        The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. On November 10, 2015, the court allowed the plaintiff to proceed on his claims that the defendants demonstrated deliberate indifference to his serious medical needs. Dkt. No. 7. On August 16, 2016, defendant Donald Stonefeld filed a motion for judgment on the pleadings or, in the alternative, a motion for summary judgment. Dkt. No. 40. The next day, defendant Beverly Felten filed a motion for summary judgment. Dkt. No. 43. This decision resolves those motions.

I. **RELEVANT FACTS**[1]

   A. Parties

The plaintiff is a Wisconsin state prisoner who was formerly incarcerated at the Milwaukee County Jail ("Jail") and the Milwaukee County House of Correction ("HOC"). Dkt. No. 70 at 24 ¶1.

Defendant Beverly Felton is a registered nurse, an advanced practice nurse practitioner (APNP), a clinical specialist in gerontological nursing, and holds a PhD in nursing. Id. at 24-25 ¶3. From 2007 through 2013, Felten worked as a psychiatric APNP for the Milwaukee County Sheriff's Department and provided psychiatric services to inmates housed at the Jail and the HOC. Id. at 25 ¶4. Her duties at the Jail included assessing inmates' health care needs, including evaluating whether an inmate exhibited mental illness and a need for psychotropic medication, and prescribing psychotropic medication, if necessary and appropriate. Id. at ¶5.

Defendant Donald Felten is a state licensed physician specializing in the field of psychiatry who previously provided psychiatric services to inmates

---

[1] The court takes the facts from the "Response of Defendant, Beverly Felton, to Plaintiff's Proposed Findings of Fact in Support of Response Brief to Defendants' Motions for Summary Judgment, and Reply of Defendant, Beverly Felten, to Plaintiff's Response to Defendant, Beverly Felten's Proposed Material Facts in Support of Motion for Summary Judgment" (dkt. no. 70). The court takes additional facts from the plaintiff's response to defendant Stonefeld's proposed material facts in support of his motion for summary judgment (see dkt. no. 62 at 4-10. The facts are undisputed unless otherwise noted.

housed in the Jail and the HOC. Dkt. No. 62 at 7 ¶17. Stonefeld's duties included providing psychiatric consultation to inmates referred by a physician, psychologist, or nurse practitioner to evaluate whether the subject exhibited severe mental illness and a need for psychotropic medication, as well as prescribing psychotropic medication if necessary and appropriate. Id. at ¶18.

    B. <u>The Plaintiff's Interactions with the Defendants</u>

The plaintiff was admitted to the Jail on November 2, 2009. Dkt. No. 70 at 29 ¶14. At the time he was admitted, he was prescribed Levothyroxine for his thyroid and Ranitidine for his acid reflux. Id. at ¶15.

On November 4, 2009, a social worker at the Jail (who is not named as a defendant) conducted a mental health exam of the plaintiff. Id. at ¶16. The plaintiff responded affirmatively to the social worker's inquiry about whether the plaintiff was willing to receive help and possibly medication for his being sad about being back in Jail. Id. at 30 ¶18. The social worker referred the plaintiff to "Pych MD" for a medical evaluation. Id. at 31 ¶19.

On November 5, 2009, the plaintiff told a nurse practitioner (who is not named as a defendant) that he was depressed and needed help. Id. at ¶21. That same day, someone (it is unclear who) prescribed the plaintiff 150 milligram tablets of Ranitidine. Id. at 32 ¶22. Ranitidine is used to treat and prevent ulcers; it also treats conditions in which the stomach produces too much acid, and it treats gastroesophageal reflux disease and other conditions in which

acid backs up from the stomach into the esophagus, causing heartburn. See https://www.drugs.com/ranitidine.html.

On November 8, 2009, Jail medical personnel discontinued the plaintiff's prescription for Ranitidine because the plaintiff's fiancé brought his prescription to the Jail. Dkt. No. 70 at 32 ¶23. When his personal prescription ran out later that month, the Jail personnel re-prescribed Ranitidine through May 11, 2010. Id. at ¶23.[2]

In December 2009, the plaintiff was transferred from the Jail to the House of Correction. Dkt. No. 62 at 7 ¶7.

On December 28, 2009, Felten examined the plaintiff. Dkt. No. 70 at 32 ¶24. During the examination, the plaintiff told Felten that he felt like hurting people when they get in his face and that he had previously tried to commit suicide two times by cutting himself. Id. Felten states that the plaintiff also said that he heard voices, including the voices of his dead mother and the devil and that he felt like breaking people's necks or poking their eyes out. Id. at 33 ¶25. Felten asserts that the plaintiff also displayed jerking movements. Id. The plaintiff states that he told Felten that he recalled things that his mother used to say to him and that he had cut his arm when he was nineteen or twenty but

---

[2] Stonefeld asserts that the plaintiff was never prescribed Ranitidine and Risperidone at the same time; the plaintiff disputes this, explaining that the Jail's prescription for Ranitidine was cancelled only while he was taking the prescribed Ranitidine brought to him by his girlfriend. Once that prescription ran out, the Jail re-prescribed Ranitidine on November 22, 2009; that prescription continued until March 2010. See Dkt. No. 62 at 8 ¶28-30.

that he would not ever do that again. Id. Based on her conversation with the plaintiff, Felten concluded that the plaintiff demonstrated "active thoughts of hurting others with viable plans." Id. at 34 ¶26. She then called for assistance and ordered the plaintiff into psychiatric custody. Id. at ¶27.

Felten states that the plaintiff resisted being moved into psychiatric custody and began to bang his head. Id. at 34-35 ¶28. The plaintiff asserts that he did not resist or bang his head; he states that he was handcuffed, surrounded and restrained by correctional officers at the time. Id.

Felten ordered that the plaintiff receive a two-milligram injection of Ativan, an antianxiety medication, and that he be placed on homicide watch with a "razor restriction." Id. at 35 ¶29. She also prescribed the plaintiff a one-milligram dose of Risperidone, an antipsychotic medication used to treat schizophrenia and symptoms of bipolar disorder, and a daily fifty-milligram dose of Sertraline, an inhibitor used to treat depression, obsessive-compulsive disorder, and anxiety disorders. Id. at 36 ¶30. Felten did not have any further involvement with the plaintiff after December 28, 2009. Id. at ¶32.

Stonefeld examined the plaintiff the next day, December 29, 2009. Dkt. No. 62 at 8 ¶16. During that examination, Stonefeld determined that the plaintiff was calm and rational and "just wanted someone to talk to." Id. at 9 ¶19. Stonefeld concluded that the plaintiff posed no pending danger to himself or others and should be released from psychiatric custody to general population. Id. at ¶20. Stonefeld continued the medications prescribed by

5

Felten, and his assessment report indicates that he discussed the medications and their potential side effects with the plaintiff; the plaintiff disputes that such a conversation occurred. Id. at ¶21.

On December 31, 2009, the plaintiff's Risperidone prescription was increased to a daily dose of two milligrams (it is unclear who ordered this increase). Id. at ¶14. On January 7, 2010, the plaintiff's Sertraline prescription was increased to one hundred milligrams (again, it is unclear who ordered this increase). Id. at 10 ¶26.

On March 24, 2010, Stonefeld met with the plaintiff for a second and final time. Id. at ¶32. The plaintiff complained that he was experiencing side effects commonly associated with Risperidone, including involuntary spasms in his back, chest, arms, and legs. Id. at ¶31. In response to those complaints, Stonefeld discontinued the plaintiff's Risperidone prescription. Id. ¶33.

The plaintiff was transferred to Dodge Correctional Institution on May 11, 2009. Id. at 11 ¶34. Doctors at Dodge Correctional and New Lisbon Correctional (neither of whom are named as defendants) prescribed the plaintiff medication for severe headaches. Id. at 6 ¶37-38. The plaintiff asserts that these headaches, which he continues to suffer, are due to taking Risperidone and Sertraline. Id. at ¶38. The plaintiff also states that on August 19, 2016, an unidentified doctor (who is not named as a defendant) diagnosed him with tardive dyskinesia (which causes stiff, jerky, uncontrolled movements of one's face and body), which the plaintiff also asserts he developed as a result of

6

taking Risperidone and Sertraline. Id. at ¶39; see

http://www.webmd.com/schizophrenia/guide/tardive-dyskinesia#1.

C. The Plaintiff's Grievance

On May 4, 2015, more than five years after his interactions with Felten and Stonefeld, the plaintiff filed an inmate grievance form with the HOC, alleging that Felten demonstrated deliberate indifference when she examined him on December 28, 2009. Id. at ¶40, 41. The grievance stated:

> While in custody at the Milwaukee County House of Corrections, Calvin Brown (the plaintiff), was subjected to deliberate indifference by HOC nurse Beverly Felten to the plaintiff's serious medical need in violation of The Fourteenth Amendment, to wit; on 12/28/09, Felten has harmed the plaintiff by (1) giving the plaintiff Risperidone without the approval on examination of the plaintiff's doctor, (2) the plaintiff's doctor was of the written opinion that Felten had no psychiatric experience to place the plaintiff on R[i]speridone, and (3) Felten giving the plaintiff R[i]seperidone has caused the plaintiff serious physical and mental harm. See Balla v. State Bd. Of Pardons 595 D.Supp 1558 (D.Idaho.1984). Please send the answer to this complaint pursuant to 42 U.S.C. § 1997(e) to Calvin Brown #317946 Stanley Correctional Institution 100 Corrections Drive Stanley, Wisconsin 54768-6500

Dkt. No. 1-1 at 2.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317,

7

324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Exhaustion

According to the Prison Litigation Reform Act, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the

rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001).

If a court determines that an inmate failed to complete any step in the exhaustion process prior to filing a lawsuit, the court must dismiss the plaintiff's complaint. Perez v. Wis. Dept. of Corrs., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits.").

The defendants argue, in part, that the court must dismiss the plaintiff's lawsuit because he did not comply with the time limits for filing his grievance. They rely on the affidavit of Kevin Nyklewicz, a deputy inspector at the Milwaukee County Sheriff's Office. See Dkt. No. 44-3. Nyklewicz states that every inmate booked into the Jail is given a copy of the inmate handbook, which includes information about the grievance procedures. Id. at ¶6; Id. at 5-12. Nyklewicz also asserts that inmates must file their grievances within fourteen days after the occurrence that gave rise to the complaint. Id. at ¶9. Nyklewicz cites to the Wisconsin Department of Corrections Complaint procedures, Wis. Admin. Code § DOC 310, et seq., in support of this assertion. Id.

9

While the plaintiff does not dispute that he was given a copy of the handbook, he does dispute that the handbook contains a fourteen-day time limit for inmates to file a grievance. In fact, the plaintiff argues that the handbook contains *no* time limit for the filing of grievances. See Dkt. No. 44-3 at 7-8, 10. Further, the plaintiff argues that the Wisconsin Administrative Code, which Nyklewicz cites as the source of the fourteen-day time limit, applies only to the Wisconsin Department of Corrections institutions, and does not apply to the Jail or the HOC. Neither defendant addresses these arguments.

The plaintiff is correct. The Wisconsin Administrative Code applies to *state* institutions. The defendants have offered no evidence demonstrating that the *county* adopted the state code, or that *county* inmates are told that they must comply with *state* regulations. Instead, the county inmates are given a copy of the relevant handbook, and that handbook is silent on whether there is a time limit by which an inmate must file a complaint. Because the plaintiff cannot be required to comply with a time limit that does not exist, the court will not dismiss his lawsuit for failure to timely file his grievance.

The defendants also argue that the plaintiff failed to comply with the procedures in the handbook, because he did not first "address[] the problem with the Pod Deputy" before filing his grievance. Dkt. No. 44-3 at 8. Because the plaintiff had long before transferred out of the HOC, it was impossible for him to comply with this requirement—he had no Pod Deputy at the time he

filed his grievance. The court will not fault the plaintiff for failing to comply with requirements that were rendered irrelevant by a change in circumstances over which the plaintiff had no control.

Finally, Stonefeld separately argues that, even if the court considers the plaintiff's grievance timely filed, the plaintiff failed to exhaust his administrative remedies as to Stonefeld because the plaintiff's grievance focused exclusively on Felten's conduct. The court agrees. The plaintiff's grievance is very specific: he complained only that Felten demonstrated deliberate indifference to his medical needs when she prescribed medication to him without the approval of his doctor and without relevant experience or qualifications to do so. The plaintiff did not complain generally about the care he received (in which case identifying the individual actors would not be required); instead, his grievance focused on the specific actions of one person.

Some of the policy goals giving rise to the exhaustion requirement include giving prison officials the opportunity to address situations internally, and giving the parties the opportunity to develop the factual record. Here, given the focus of the plaintiff's grievance on *Felten's* actions, the HOC would not have known to broaden any internal investigation to include the actions of *Stonefeld*, thus potentially depriving it of the exhaustion requirement's ability to address the plaintiff's concerns with Stonefeld internally.

The court concludes that, given the specific nature of the plaintiff's grievance, he did not exhaust his claim against Stonefeld before he filed his lawsuit. Accordingly, the court will dismiss Stonefeld as a defendant.

C. Deliberate Indifference

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The parties agree that the plaintiff presented with a serious mental health need at the time Felten examined him. The plaintiff previously had told a social worker at the Jail that he was willing to receive help, and possibly medication, to treat his sadness over being back in jail. He also told a nurse practitioner at the Jail that he was depressed and needed help. When the plaintiff met with Felten, he told her, among other things, that he felt like hurting people when they got in his face and that he had cut himself twice in the past. The court finds that these facts are sufficient to satisfy the objective element of the deliberate indifference standard. See Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (a medical need is serious when "the failure to

treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.")

The parties disagree, however, about whether Felten acted with a sufficiently culpable state of mind when she treated the plaintiff. When a prisoner alleges deliberate indifference, often it is because a prison official ignored, failed to treat, or provided only minimal treatment in response to a prisoner's medical needs. Here, the plaintiff alleges the opposite: he alleges that Felten *over-treated* his medical needs by prescribing medication that she was not qualified to prescribe, and that the plaintiff did not need.

Specifically, the plaintiff argues that Felten demonstrated deliberate indifference to his serious medical needs when she prescribed two unnecessary psychotropic medications without contacting a psychiatrist or physician. Dkt. No. 66-1 at 3. He says that Felten knew these drugs had common side effects, but that she failed to warn him of those side effects before prescribing the drugs. Id. at 4. Finally, the plaintiff asserts that Felten failed to account for the other medication the plaintiff was taking, which resulted in the plaintiff taking a dangerous combination of drugs. Id. The court finds that no jury could reasonably conclude that Felten was deliberately indifferent to the plaintiff's serious medical needs.

First, the plaintiff focuses on Felten's work history and education, arguing that she lacked the qualifications and experience to prescribe the medication. The evidence Felten provided undermines the plaintiff's argument.

13

The plaintiff argues that Felten had no experience in psychiatry. According to Felten's resume, however, she worked as a gero-psych clinical nurse specialist from 1989 to 1992; from 1992 to 1994, she worked on a gero-psych unit; from 1994 to 2007, she performed outpatient psychotherapy and geriatric and psychiatric prescribing; and from 2006 to 2007 she was employed as an APNP acute care psychiatric nurse prescriber. Dkt. No. 44-2 at 6. In addition, Felten began her position with the Milwaukee County Sheriff's department as a psych APNP in 2007—*two years* before she prescribed medication to the plaintiff. Id. On these facts, no jury could reasonably conclude that Felten lacked the necessary qualifications or relevant work experience to prescribe antipsychotic medication to the plaintiff. The plaintiff's conclusory assertion that Felten was not qualified is not enough for this claim to survive summary judgment.

Next, the plaintiff argues that, if Felten *was* qualified to prescribe these medications, she should have warned the plaintiff of the medication's potential side effects. He explains that, as a result of taking Risperidone, he developed involuntary muscle spasms in his back, chest, arms and legs, and tremors in his face, chest and legs—all of which are common side effects.

In Phillips v. Wexford Health Sources, Inc., the Court of Appeals for the Seventh Circuit explained that "[t]he Eighth Amendment protects inmates from deliberate indifference to *substantial* risks of serious damage to their health." 522 Fed.Appx. 364, 367 (7th Cir. 2013) (emphasis in original). Under this standard, a prescriber must warn her prisoner-patient only of those side effects

that the patient has a substantial risk of developing, and which present a substantial risk of serious damage to his health. See id. The plaintiff asserts only that he experienced common side effects; he does not provide any evidence to support his assertion that Felten knew that he had a substantial risk of developing those common side effects (or that these common side effects posed a substantial risk of damage to his health). While muscle spasms and tremors are unpleasant and uncomfortable, they do not constitute serious damage to the plaintiff's health.

Finally, the plaintiff also appears to argue that Felten demonstrated deliberate indifference because she failed to account for the other medication he was taking when she prescribed Risperidone. To support his claim, the plaintiff points to a document which he appears to have pulled from the Internet, with the heading "Drug details – MICROMEDEX 2.0," which warns with regard to Risperidone that, "There are many other medicines that you should not use while you are taking risperidone. Taking risperidone with certain other medicines may be dangerous, even life-threatening. Make sure your doctor and your pharmacist knows about all other medicines you [take.] Make sure your doctor knows if you are taking . . . ranitidine . . . ." Dkt. No. 62-18 at 2.

The plaintiff does not provide evidence that he experienced a negative or life-threatening reaction as a result of taking Risperidone (the antipsychotic medication) and Ranitidine (the anti-reflux medication) at the same time, or

15

even that he personally had a heightened risk of experiencing such a reaction.[3] The drug details state only that "taking risperidone with certain other medicines *may* be dangerous." Id. In addition, they do not state that Risperidone should *not* be taken with Ranitidine; they state only that a patient should inform his doctor that he is taking Ranitidine. In other words, the plaintiff has alleged only that he may have been at risk of suffering harm, not that he actually suffered any harm. That allegation is insufficient for the court to allow him to proceed on a deliberate indifference claim. See Babcock v. White, 102 F.3d 267, 270-72 (7th Cir. 1996).

Nor has the plaintiff presented any evidence that Felten knew that he was taking Ranitidine when she prescribed Risperidone. The plaintiff does not assert that he informed Felten that he was taking Ranitidine (as the drug details instructed him that he should do); he states only that Felten had access to his medical records, which documented the medication he was taking. Dkt. No. 66-1 at 4. Felten, on the other hand, contends that she did not prescribe Ranitidine and Risperidone at the same time, dkt. no. 44-22 ¶14, implying that she did not know the plaintiff was already taking Ranitidine when she prescribed Risperidone. The reasonable inference to draw from this evidence is that, although Felten had access to the plaintiff's medical records, she did not

---

[3] The plaintiff asserts that the shakes and tremors he experienced were a result of taking the antipsychotic medication (specifically Risperidone), dkt. no. 62 at 17 ¶34; dkt. no. 62-17, not a result of taking Risperidone and Ranitidine in combination.

16

realize that the plaintiff was taking Ranitidine at the time she prescribed the Risperidone. At most, this fact proves negligence; negligent conduct on the part of a state official does not constitute a constitutional violation. Daniels v. Williams, 474 U.S. 327, 331, 333-34 (1986); Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Russ v. Watts, 414 F.3d 783, 788-89 (7th Cir. 2005).

The plaintiff disagrees with Felten's decision to prescribe the medications she ordered, but that disagreement is not enough to allow a reasonable jury to conclude that Felten acted with deliberate indifference. Felten was free to make her own, independent medical determination as to the necessity of certain medications. Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012). The plaintiff has not provided any evidence to support his assertion that her decision was "such a substantial departure from accepted medical professional judgment, practice, or standards, as to demonstrate" that she did not base her decision on a medical judgment. Id. at 1073. To the contrary, Felten's decision about which medications to prescribe was affirmed by Stonefeld, the plaintiff's treating psychiatrist, on the following day when he decided to continue her prescriptions.[4] See Dkt. No. 62 at 9 ¶21.

---

[4] The plaintiff makes much of Stonefeld's comment that Felten "overreacted" and that "with no psych background [Felten] was not equipped to determine whether [the plaintiff's] [th]oughts were of impending danger or he wanted to discuss and understand." See Dkt. 1-1 at 8. Given that Stonefeld continued the medications Felten prescribed, it is reasonable to infer that Stonefeld's comments were directed at Felten's decision to remove the plaintiff from general population and place him on homicide watch with a razor restriction,

The court will dismiss the plaintiff's claims against Felten.

### III. CONCLUSION

The court **ORDERS** that defendant Donald Stonefeld's motion for judgment on the pleadings or, in the alternative, for summary judgmentis **GRANTED.** Dkt. No. 40.

The court **ORDERS** that defendant Beverly Felten's motion for summary judgment is **GRANTED.** Dkt. No. 43.

The court **DISMISSES** this case, and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry

---

see dkt. no. 1-1 at 6, and not at her decision to prescribe psychotropic medications. The plaintiff has not challenged Felten's decision to remove him from general population.

of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of August, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**